Martha E. Henderson v. Commissioner.
Henderson v. Commissioner
Docket Nos. 2377-65, 707-66.
United States Tax Court
T.C. Memo 1968-22; 1968 Tax Ct. Memo LEXIS 278; 27 T.C.M. (CCH) 109; T.C.M. (RIA) 68022; January 31, 1968. Filed Richard Steel, for the petitioner. Lawrence *279 J. Shongut, for the respondent. FAY
Memorandum Findings of Fact and Opinion Fay, Judge: Respondent determined deficiencies in petitioner's income tax as follows: Doc. No
Taxable Year
Amount
707-66
1961
$501.49
2377-65
1962
627.85
Certain issues raised in the pleadings were disposed of by agreement of the parties prior to the trial herein. The issues left for decision involve the allowability of certain itemized deductions which petitioner claimed for the taxable years 1961 and 1962. Findings of Fact Some of the facts were stipulated. The stipulation of facts together with the exhibits attached thereto is incorporated herein by this reference. Martha E. Henderson (hereinafter referred to as petitioner) filed Federal individual income tax returns for the taxable years 1961 and 1962 with the district director of internal revenue, Manhattan, New York. Petitioner was a legal resident of New York, New York, when she filed the petitions in this case. Petitioner was born in 1900. Her husband died in 1939. During 1961 and 1962, she lived in an apartment in New York, New York. It was an "efficiency" apartment containing one large room with *280 a kitchen, bathroom, and dressing area adjoining it. The large room was 17 feet wide and 24 feet long. During 1961 and 1962, petitioner worked for Alexandre Yaremenko (hereinafter referred to as Yaremenko). Petitioner met Yaremenko during World War II and began working for him in 1959. Yaremenko owned Central Book and Art Company (hereinafter referred to as Book Store), a store located ten blocks from petitioner's apartment. Book Store sold books, greeting cards, paintings, and gifts. In addition to owning Book Store, Yaremenko was a certified public accountant. He filled out petitioner's Federal income tax returns for the years here in question. Most of the work which petitioner did for Yaremenko was in the nature of handicraft. She made such things as religious icons and greeting cards. In addition to handicrafts, she did some secretarial work for him. She worked in her apartment because there was not sufficient space in Book Store for her to work. She worked, on an average, four hours a day, five days a week. Her compensation was $30 a week. In addition to working for Yaremenko, petitioner held and managed various investments during 1961 and 1962. The largest portion of her *281 investment portfolio consisted of stocks of publicly-held corporations. Petitioner managed her investments in a businesslike manner. She subscribed to and read the Wall Street Journal and several investment services. She also collected a variety of information about investments such as corporate financial reports, news releases, and brokers' recommendations. Petitioner was a successful investor. She began investing in 1939 with property worth $75,000. By 1961, her investments were worth more than $300,000. Her stocks paid dividends of more than $9,000 in each of the years 1961 and 1962. Petitioner worked, on an average, 20 hours a week managing her investments during 1961 and 1962. She carried on most of her investment activities in her apartment, where she had file cabinets, book shelves, a desk, and other appropriate equipment. She did, however, travel about once a week to a bank where she kept a safe deposit box and a custodial account. She traveled by taxi - a trip that cost approximately $1.50 each way. She also visited a stock broker once a month. The taxi fare for this trip was approximately $1.25 each way. In addition to these weekly and monthly trips, petitioner had other *282 miscellaneous travel expenses in connection with her investment activities. During 1961 and 1962, petitioner used the telephone in her apartment in connection with her investment activities. She also used it to converse with Yaremenko about her work for Book Store. Throughout 1961 and 1962, petitioner entertained Yaremenko at her apartment once a week. In addition, she occasionally entertained her stock broker. 111 During 1961 and 1962, petitioner was a member of the Church of Truth in New York City. She attended church every Sunday. During 1961 petitioner gave $175 in personal checks to the church. During 1962 she gave $400 in checks to the church. In addition to her gifts by check, petitioner gave between $1 and $5 a week in cash to her church during 1961 and 1962. During the years here in question, petitioner's furnishings in her apartment included custom-made cabinets for holding investment records, an air conditioner, and a vacuum cleaner. The dates of acquisition and cost of these items were as follows: Date ofAcquisition
Cost
Custom-made cabinets
1950
$640.00
Air conditioner
1953
379.90
Vacuum cleaner
1960
110.47 In her Federal income *283 tax returns for the years here in question, petitioner elected to depreciate these items on the straight-line method using the dates of acquisition shown above. She furthermore claimed that each of them had a salvage value of zero and a useful life of ten years. On her Federal income tax returns for 1961 and 1962, petitioner deducted the following amounts: Item
1961
1962
Charitable contributions
$500.00
$500.00
Travel in connection with in- vestment activities
200.00
Depreciation:
Custom-made cabinets
64.00
24.00
Air conditioner
37.00
37.00
Vacuum cleaner
11.00
11.00
Gifts and gratuities
75.00
75.00
General and misc. expenses
100.00
Business expenses
870.96
808.36 The "business expenses" listed above were, in 1961, 50 percent of the following amounts and, in 1962, a little less than 50 percent [1] of the following amounts: Item
1961
1962
Apartment rent
$ 909.90
$ 909.90
Telephone
98.31
117.93
Electricity
113.30
91.95
Entertainment
350.97
326.29
Cleaning
250.00
250.00
Repairs 19.45
20.06
$1,741.93
$1,716.13
*284 In his notice of deficiency for 1961, respondent disallowed petitioner's charitable contribution deduction, except that portion which reflected gifts she made with personal checks. He also disallowed the entire amount of the other deductions for 1961 which are listed above. In his notice of deficiency for 1962, respondent disallowed petitioner's charitable deduction, except that portion which reflected gifts she made with personal checks. With one exception, he disallowed the entire amount of the other deductions for 1962 which are listed above. The exception is that respondent allowed a deduction of $29.48 for telephone expenses. This is 25 percent of the total amount of petitioner's telephone expenses for 1962. Opinion The first issue is whether petitioner is cntitled, under section 170, [2] to charitable contribution deductions of $500 in each of the years 1961 and 1962. Respondent's position is that petitioner is only entitled to deductions of $175 in 1961 and $400 in 1962, because she failed to substantiate contributions of any greater amount. We do not agree. Petitioner *285 proved that she contributed to her church $175 in 1961 and $400 in 1962 by personal checks. She also proved that she made additional cash contributions to her church of $1 to $5 when she attended every Sunday. On the basis of this evidence, we hold that petitioner contributed to her church $150 in cash in 1961 and $100 in cash in 1962. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Taking petitioner's cash contributions together with her contributions by check, we hold that she is entitled to charitable contribution deductions of $325 in 1961 and of $500 in 1962. The second issue is whether petitioner is entitled, under section 212, to a deduction of $200 for travel in connection with her investment activities during 1961. Respondent's position is that petitioner failed to substantiate her travel expenses. We do not agree. Petitioner proved that she made almost weekly trips to meet with the manager of her custodial account and monthly trips to meet with her broker. She proved that her weekly trips cost approximately $3 each and that her monthly trips cost approximately $2.50 each. She furthermore proved that she had other investmentactivity travel than these *286 weekly and monthly trips. On the basis of this evidence, we hold that she spent $185 in investmentactivity travel during 1961. Cohan, supra.112 The next issue is whether petitioner is entitled to deductions, under sections 212 and 162, for part of her household expenses during 1961 and 1962. Petitioner's position is that she is entitled to deduct approximately 50 percent of her expenses for rent, telephone service, electricity, home entertaining, cleaning, and repairs because she carried on her investment activities and her work for Book Store in her apartment. Respondent takes alternative positions. His primary position is that petitioner is not entitled to deduct any portion of her household expenses. His main argument to support this position is that petitioner failed to substantiate her expenses. With respect to her home entertainment expense, however, he makes the additional argument that petitioner failed to prove the relationship of the expense to her investment activities and her work for Book Store. Respondent's alternative position is that if petitioner is entitled to deduct part of her household expenses. the part which is deductible is much less than *287 50 percent. Looking first at the question of substantiation and proof of business or investment relationship, we think petitioner is entitled to deduct a portion of some, but not all, of her household expenses. The testimony of petitioner and of her accountant proved that she spent the following amounts during the years in question: Item
1961
1962
Rent
$909.90
$ 909.90
Telephone
98.31
117.93
Electricity
113.30
91.95
Cleaning
250.00
250.00
Repairs
19.45
20.06 Because respondent concedes on brief that petitioner conducted her investment and Book Store activities in her apartment, and because the above expenses were necessary to maintain the apartment, we conclude that petitioner is entitled to deduct a portion of these expenses. Due to a failure to meet her burden of proof, however, petitioner is not entitled to deduct any portion of her claimed expense for home entertainment. Petitioner's evidence shows that she did entertain at home. She did not, however, offer any evidence to show the nature or cost of the entertainment. Furthermore, her proof as to the relationship of the entertainment to her investment activities and her Book Store work *288 was vague and general. It lacked specificity as to the type and extent of business or investment activity which accompanied the entertainment. Because of petitioner's total lack of records with respect to her entertainment, and because of the witnesses' vague descriptions of the business or investment activity which accompanied it, the entertainment appears to have been much more for petitioner's personal enjoyment than for any other purpose. This fact combined with petitioner's total failure to show the amount of her entertainment expense leads us to conclude that she is not entitled to deduct any part of her entertainment expense for the years in question. We deal next with the question of what portion of petitioner's expenses for rent, telephone service, electricity, cleaning, and repairs is deductible. Petitioner claims that she is entitled to deduct 50 percent of the expenses. She argues that this is a "fair and equitable" allocation of her expenses between her business and investment activities on one hand and her personal activities on the other hand. We do not agree. With one caveat, we think the appropriate allocation should be 12 percent. [3] We arrive at this figure, *289 under the circumstances of this case, in a threestep process. First, from the record as a whole, we conclude that 50 percent of the usable space in petitioner's apartment was oriented toward her investment and business activities. Second, we conclude from the record as a whole that petitioner spent 20 hours a week on her Book Store activities and 20 hours a week on her investment activities. Combining the time spent on both, she spent 40 hours a week, or about 24 percent of her time, on investment and Book Store activities. Third, by multiplying the time allocation percentage by the space allocation percentage, we arrive at a final allocation factor of 12 percent. Cf. Rev. Rul. 62-180, 1962-2 C.B. 52, at 54; Hoggard III v. United States, - F.Supp. - (D.C.E.D.Va. 1967). This allocation ratio is appropriate to determine the deductible portion of petitioner's expenses for rent, electricity, cleaning, and repairs. Because these expenses are relevant to petitioner's use of the space in her apartment, it is appropriate to allocate them on a space-use *290 basis, as well as on a time-use basis. Petitioner's expense for telephone service, however, is not relevant 113 to her use of the space in her apartment. We must, therefore, allocate this expense on a time-use basis alone. As pointed out above, the time-use factor is 24 percent. [4]
The next issue is whether petitioner is entitled, under section 167, to depreciation deductions in 1961 and 1962 on custom-made cabinets, an air conditioner, and a vacuum cleaner. Respondent's position is that the cabinets were fully depreciated prior to the years in question and that petitioner failed to prove a cost basis for the air conditioner and vacuum cleaner. With respect to the cabinets, we agree with respondnnt. We conclude from the record as a whole that petitioner acquired the cabinets in 1950. The evidence shows that she elected to depreciate them over a ten-year period. Petitioner made no attempt to prove a factual basis for redetermining the useful life of the cabinets. See Income Tax Regs. section 1.167(a)-1(b) *291 . It follows that she is not entitled to a deduction for depreciation of the cabinets in 1961 and 1962. See Income Tax Regs. section 1.1016-3(a)(2). With respect to the air conditioner and vacum cleaner, we do not agree with respondent that petitioner failed to prove a cost basis. Petitioner's testimony substantiated the cost basis of $379.90 which she claims for the air conditioner. Furthermore, the testimony of petitioner's accountant taken in connection with the documentary evidence substantiated the cost basis of $110.47 which she claims for the vacuum cleaner. Petitioner elected to depreciate the air conditioner and vacuum cleaner with the straight-line method and she attributed to them a useful life of ten years and a salvage value of zero. It follows that the economic depreciation during the years in question was: 1961
1962
Air conditioner
$37.00
$37.00
Vacuum cleaner 11.00
11.00
$48.00
$48.00 Because petitioner used her apartment, and thus the air conditioner and vacuum cleaner, for personal as well as business and investment purposes, she is not entitled to deduct the entire amount of the economic depreciation. *292 She is only entitled to deduct that portion which is allocable to her business and investment activities. Applying the space-use factor developed above, petitioner is entitled to a depreciation deduction of 12 percent of $48, or $5.76, in each of the years 1961 and 1962. The final issue is whether petitioner is entitled to deduct "general and miscellaneous" expenses in 1961 and expenses for "gifts and gratuities" in 1961 and 1962. Petitioner introduced no evidence with respect to these expenses. We hold that she is not entitled to deduct the expenses because she failed to meet her burden of proof with respect to them. To reflect concessions of the parties and the holdings set forth above, Decisions will entered under Rule 50. Footnotes
1. Petitioner apparently intended to deduct 50 percent of the amounts in question in 1962, but actually deducted less than 50 percent because of a mathematical error.↩
2. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
3. As we later show, it is necessary to use a different allocation ratio with petitioner's expenses for telephone service.↩
4. Respondent conceded a dedutcion of 25 percent of petitioner's expense for telephone service in 1962. She will therefore get a 25 percent deduction for that year rather than a 24 percent deduction.↩